# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs December 21, 2010

## STATE OF TENNESSEE v. KEANEST D. WHITSON

**Appeal from the Criminal Court for Washington County**
**Nos. 33292 & 35646      Lynn W. Brown, Judge**

---

**No. E2010-00408-CCA-R3-CD -Filed June 28, 2011**

---

In this State appeal, the State contends that the trial court erroneously interfered with its plea negotiations with the defendant. The State has no right to appeal via the Tennessee Rules of Appellate Procedure. Because the State's claim in case number 33292 regarding the trial court's acceptance of the defendant's guilty plea to a community corrections violation is not reviewable via the common law writ of certiorari, a majority has concluded, albeit on different grounds, that the State's claim in that regard should be dismissed. Because the record establishes that the trial court acted outside its authority in case number 35646, a majority has reviewed the State's claims in that case via the common law writ of certiorari and has concluded that the trial court was without authority to accept the defendant's plea of guilty to the lesser included offense of unauthorized use of an automobile without the consent of the State. In consequence, the conviction of the unauthorized use of an automobile is vacated and reversed, and that count of the indictment is remanded to the trial court for further proceedings on the original charge of theft of property valued at more than $1,000 but less than $10,000. With regard to the sentences imposed in both cases, a majority of the court that does not include the author of this opinion has concluded, on differing grounds, that a remand for resentencing is appropriate.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed in Part; Vacated and Reversed in Part; Remanded in Part**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court. JOSEPH M. TIPTON, P.J., filed a separate opinion concurring in part and dissenting in part. D. KELLY THOMAS, JR., J., filed a separate opinion concurring in part and dissenting in part.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Tony Clark, District Attorney General; and Robin Ray, Assistant District Attorney General, for the appellant, State of Tennessee.

Steve McEwen, Mountain City, Tennessee (on appeal); and Bill Fransciso, Assistant District Public Defender (at trial), for the appellee, Keanest D. Whitson.

**OPINION**

A somewhat fractured trilogy of opinions in this case has emanated from the convergence of certain pre-appeal anomalies and other circumstances: (1) the trial court's unusual response to a plea agreement involving multiple counts and two difference cases; (2) the joinder of a community corrections revocation case with a case presenting new charges; (3) the State's failure to seek in a timely way the enhancement of certain sentences; and (4) the State's failure to formulate appellate issues over which this court has jurisdiction or which are otherwise justiciable on appeal.

In case number 35646, the Washington County grand jury charged the defendant, Keanest D. Whitson, with driving after being declared a motor vehicle habitual offender ("MVHO"), *see* T.C.A. § 55-10-616(a) (2004); leaving the scene of an accident, *see id.* § 55-10-101(a); theft of property valued at more than $1,000 but less than $10,000, *see id.* § 39-14-103, -105 (2006); and vehicular assault, *see id.* § 39-13-106(a). On September 1, 2009, a violation warrant issued in Washington County case number 33292 alleging that the defendant had violated the terms of his six-year community corrections sentence in that case by committing the offenses charged in case number 35646, by failing to pay court costs and fines, by failing to report, and by using alcohol.[1] On January 28, 2010, the defendant entered pleas of guilty in case number 35646 to driving after being declared an MVHO, leaving the scene of an accident, unauthorized use of an automobile as a lesser included offense of theft, and vehicular assault. The defendant also admitted violating the terms of his community corrections sentence in case number 33292.

At the January 28, 2010 guilty plea submission hearing, the State indicated that it had reached an agreement providing for a total effective sentence of 14 years to be served as six years' incarceration followed by eight years' community corrections in exchange for the defendant's guilty pleas to the charges in case number 35646, including the reduction of the theft charge to unauthorized use of an automobile, and to the violation of the terms of his community corrections placement in case number 33292. The prosecutor described the offenses: "The statement of official version, [the defendant] was drunk and wrecked. The passenger was passed out when the officer got there, unconscious." Describing the agreement with the defendant, the prosecutor said, "I'm giving him the opportunity to serve

---

[1]Although the parties at times talked about the defendant's violating his "probation," the judgment form filed in that case establishes that the defendant was sentenced to community corrections rather than probation.

the six (6) years and see what he does. If he doesn't accept the opportunity then I'll be asking for an increase, and he'll have twelve (12) years to serve." The prosecutor noted that the defendant had not committed an alcohol-related offense during the previous five years.

The defendant agreed to the State's version of the facts, and he explained that his "home life kind of caved in" and that, as a result, he went to live with his mother and stepfather, who, he said, drank alcohol "every night." He stated that the responsibility of holding a job, raising his children, and complying with the strictures of his community corrections sentence became too much for him. The defendant claimed that all of the offenses occurred within an hour and a half time frame.

The trial court informed the defendant of the possible punishments attendant to the offenses with which he was charged, the constitutional rights he was waiving by pleading guilty, and the consequences of his pleading guilty. The court found the defendant guilty of violating the MVHO order, leaving the scene of an accident, unauthorized use of an automobile, and vehicular assault. The trial court imposed the agreed sentences of six years for violating the MVHO order, 11 months and 29 days for leaving the scene of an accident, 11 months and 29 days for unauthorized use of an automobile, and eight years for vehicular assault. Per the agreement, the trial court ordered the sentences to be served concurrently to one another and consecutively to the previously-imposed six-year sentence in case number 33292.

The court then questioned the defendant's community corrections supervisor, who stated that the defendant had "kept a job and he worked every opportunity he had, so in comparison to many of our clients at least he was working and doing some things right." The supervisor agreed that the defendant's performance of program requirements was among "the top ten percent" of community corrections participants. Following this observation, the trial court revoked the defendant's community corrections sentence based upon the defendant's admitting the violations but stated that it would "reserve[] authority over that one. I'm going to put him back out today." The prosecutor noted that if the trial court refused to order incarceration for the community corrections violation, the State would withdraw the plea offer. The following exchange then took place:

> THE COURT: Well, if he pleads guilty blind then he walks out today. Do you want to plead guilty without an agreement? He's been in jail for five (5) months. Either we're going to lock him up for as long as we can or we let him out. That's what in the court's opinion is the right thing to do.
>
> GENERAL RAY: Then I guess we'll set it for trial

because my agreement was based on him – I would have asked for him to serve his sentence but for him agreeing to serve the other part.

THE COURT: Very Well. Mr. Francisco, does [the defendant] plead guilty without any agreement?

MR. FRANCISCO: Yes, based on what the court just announced.

THE COURT: Well, I mean, if he's doing that well – there's got to be a reason to warehouse people. If . . . there's no hope for him then you lock him up for as long as you can. If the only way we know that he's not out driving drunk is when he's in jail then we leave him in jail or prison. But with the District Attorney and house arrest seeing that much hope for him, it doesn't make any sense. I mean, keeping him in jail for another year, he's not going to learn anything more than he has in the last five (5) months.

MR. FRANCISCO: [The defendant] appreciates the court's comments, but he . . . understood what his agreement was, and he understands – I know he'd like to get out right now.

THE COURT: Well, I've decided that unless the court reserves the authority on that old case, the court will not accept the agreement. So he chooses to plead and there is no agreement.

. . . .

THE COURT: And that's what he wants to do?

MR. FRANCISCO: Is that what you want to do?

MR. WHITSON: Yes.

THE COURT: Very well. Without an agreement, the court accepts the plea. The same sentence as agreed on the new case, but what didn't make sense to the court is having him

-4-

serve a six (6) year sentence. In the first case, community corrections is revoked. You're placed back on house arrest community corrections six (6) years. It starts today. You're out of here today.

. . . .

GENERAL RAY: Could the court note for the record that the State requested a jury trial after withdrawing the plea and the court denied its request for a jury trial.

THE COURT: That is accurate.

GENERAL RAY: And noted for the record.

THE COURT: That's fine, but the law is that a defendant has the right to come in and plead guilty as charged, and neither the State nor the court can stop him from doing that.

After the prosecutor claimed that the State had not had an opportunity to file a notice seeking enhanced punishment, the defendant agreed to stipulate that he was a Range III, persistent offender with regard to "the new case." The prosecutor also stated, "I think if it went to trial, I'd also have the right to a sentencing hearing, and on [the defendant's] record, the presumption is that he's non-probatable with three (3) prior felonies, under the new statute." The court noted the State's objection but stated that the prosecutor's assertion was "not a correct statement of the law." Finally, the prosecutor stated her belief that the defendant was, in fact, a career offender. Again, the court noted the State's objection.

The State's claims on appeal may be broken into two distinct claims for relief: (1) that the trial court erred by inserting itself into plea negotiations with the defendant, which includes its claims that the trial court erred by accepting the defendant's waiver of a jury trial over the State's objection and by generally failing to comply with the requirements of Rule 11 of the Tennessee Rules of Criminal Procedure, and (2) that the trial court, by accepting the defendant's pleas of guilty and imposing the sentence on the same day, failed to perform its statutory duty to conduct a sentencing hearing. Before we can adjudicate these claims, however, we must determine whether we have jurisdiction over any or all of them. As we will discuss more fully below, we conclude that the Rules of Appellate Procedure do not afford the State a right to appeal any of the claims raised on appeal. A majority of the court has concluded that the common law writ of certiorari, however, does afford the State review of the trial court's actions in case number 35646. A different majority has concluded,

on **a** different ground, that he writ does not confer jurisdiction over the trial court's acceptance of a guilty plea to a community corrections violation in case number 33292. Finally, although Tennessee Code Annotated section 40-35-402 provides the State a statutory right to appeal the sentence imposed, the author of this opinion believes that statute does not afford the State a right to appeal the failure to hold a sentencing hearing as a stand alone claim and that, even if we construe the State's claim as one that the trial court improperly sentenced the defendant to the wrong range, the State waived our consideration of this claim by failing to file a timely notice seeking enhanced punishment. The remaining panel members, however, have determined that a remand for resentencing in both cases is appropriate.

## I. Plea Negotiation Claims

### A. Appellate Jurisdiction

#### (1) Jurisdiction via the Rules of Appellate Procedure

The State filed a notice of appeal pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. That rule, however, provides a right of appeal to the State only in limited circumstances:

> In criminal actions an appeal as of right by the [S]tate lies only from an order or judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) the substantive effect of which results in dismissing an indictment, information, or complaint; (2) setting aside a verdict of guilty and entering a judgment of acquittal; (3) arresting judgment; (4) granting or refusing to revoke probation; or (5) remanding a child to the juvenile court. The [S]tate may also appeal as of right from a final judgment in a habeas corpus, extradition, or post-conviction proceeding.

Tenn. R. App. P. 3(c). "When a statute affords a state or the United States the right to an appeal in a criminal proceeding, the statute will be strictly construed to apply only to the circumstances defined in the statute." *State v. Meeks*, 262 S.W.3d 710, 718 (Tenn. 2008) (citing *Carroll v. United States*, 354 U.S. 394, 400 (1957); *State v. Adler*, 92 S.W.3d 397, 400 (Tenn. 2002)). As our supreme court explained, at common law the State had no right to appeal in a criminal case under any circumstances. *Meeks*, 262 S.W.3d at 718. Later, many state legislatures and Congress granted to the prosecution limited rights of appeal via specific constitutional or statutory provisions. *See United States v. Sanges*, 144 U.S. 310,

312 (1892) ("[T]he State has no right to sue out a writ of error upon a judgment in favor of the defendant in a criminal case, except under and in accordance with express statutes, whether that judgment was rendered upon a verdict of acquittal, or upon the determination by the court of a question of law."); *see also United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568 (1977); *United States v. Wilson*, 420 U.S. 332, 336 (1975). Even where the right of appeal was granted to the prosecution, courts continued to emphasize that such provisions must be construed or applied narrowly to avoid a general grant of jurisdiction for state appeals. *Meeks* 262 S.W.3d at 718; *see also Arizona v. Manypenny*, 451 U.S. 232, 246 (1981); *State v. Reynolds*, 5 Tenn. 109, 111 (Tenn. 1817) ("It is our duty as faithful expositors of the law, to preserve it from all encroachment by implication or construction, for in so doing we guard the honor and the peace of our countrymen."). Indeed, "'appeals by the Government in criminal cases are something unusual, exceptional, not favored,' at least in part because they always threaten to offend the policies behind the double-jeopardy prohibition." *Will v. United States*, 389 U.S. 90, 96 (1967) (quoting *Carroll v. United States*, 354 U.S. 394, 400 (1957); citing *Fong Foo v. United States*, 369 U.S. 141 (1962)). "Both prudential and constitutional interests contributed to this tradition. The need to restrict appeals by the prosecutor reflected a prudential concern that individuals should be free from the harassment and vexation of unbounded litigation by the sovereign." *Manypenny*, 451 U.S. at 245. When construing the right of the State to appeal in a criminal case, reviewing courts must do so with an understanding that the granting authority, the legislature, "clearly contemplated . . . that [the prosecution] would be completely unable to secure review of some orders having a substantial effect on its ability to secure criminal convictions." *Will*, 389 U.S. at 98 n. 5.

With these considerations in mind, we turn to the question whether any portion of the State's appeal in this case fits any of the five bases for rightful appeal enunciated in Tennessee Rule of Appellate Procedure 3(c). Clearly, the action of the trial court in neither case set aside a verdict of guilty and entered a judgment of acquittal, arrested the judgment, granted or refused to revoke probation, or remanded the case to the juvenile court. *See* Tenn. R. App. P. 3(c)(2)-(5). In case number 33292, the trial court revoked the defendant's community corrections sentence, thus removing that case from the ambit of Rule 3 review. In case number 35646, the trial court's action in permitting the defendant to enter a plea of guilty to the lesser included offense of unauthorized use of an automobile in that count of the indictment originally charging theft operated as an implicit dismissal of the greater charge of theft. Construing Rule 3(c) narrowly, as we must, however, we conclude that the trial court's action did not result in the dismissal of the *indictment*. An indictment is "[a]n accusation or charge of the commission of an indictable offense, made in writing by a grand jury against one or more persons upon evidence heard by the grand jury and presented by them under oath at the instance, and by the authority, of the state or the government." *Ballentine's Law Dictionary* (3rd ed. 1969). As the courts of this state have recognized many

-7-

times over, an indictment includes the charged offense as well as all lesser included offenses. *See, e.g., Strader v. State*, 362 S.W.2d 224, 227 (Tenn. 1962) ("[W]hen one is put on trial on a single charge of felony, he is also on trial for all its lesser included offenses, as the facts may be."); *see also, e.g., State v. Burns*, 6 S.W.3d 453 (Tenn. 1999) (adopting current approach for determining which offenses are lesser included offenses of offense charged in indictment). A defendant's conviction of a lesser included offense operates as an acquittal of the greater offense, and his plea of guilty to a lesser included offense with the agreement of the State operates as a dismissal of the greater charge; neither action, however, results in a dismissal of the indictment. Consequently, we cannot say under the requisite narrow construction of the rule that the trial court's permitting the defendant to plead guilty to a lesser included offense resulted in the dismissal of the indictment. *Cf. State v. Lane*, 254 S.W.3d 349, 353 (Tenn. 2008) (quoting *Adler*, 92 S.W.3d at 400 and construing Rule 3(b) narrowly and noting "that when interpreting statutory provisions this Court follows the Latin maxim of '*expressio unius est exclusio alterius*, meaning 'the expression of one thing implies the exclusion of all things not mentioned.'"). Because Rule 3 requires a dismissal of the indictment, the appeal in case number 35646 fits none of the criteria for appeal as of right pursuant to Rule 3, and the State has no right to appeal the judgments of the trial court under Rule 3 of the Tennessee Rules of Appellate Procedure.

That being said, however, this court may, under certain circumstances, treat an improperly filed Rule 3 appeal as an interlocutory, extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. *See State v. Norris*, 47 S.W.3d 457, 463 (Tenn. Crim. App. 2000); *State v. Leath*, 977 S.W.2d 132, 135 (Tenn. Crim. App. 1998). Rule 10 provides:

> An extraordinary appeal may be sought on application and in the discretion of the appellate court alone of interlocutory orders of a lower court from which an appeal lies to the Supreme Court, Court of Appeals or Court of Criminal Appeals: (1) if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review, or (2) if necessary for complete determination of the action on appeal as otherwise provided in these rules. The appellate court may issue whatever order is necessary to implement review under this rule.

Tenn. R. App. P. 10(a). Before this court will grant an extraordinary appeal, however, the appellant must establish that: (a) "the ruling of the court below represents a fundamental illegality," (b) "the ruling constitutes a failure to proceed according to the essential requirements of the law," (c) "the ruling is tantamount to the denial of either party of a day in court," (d) "the action of the trial judge was without legal authority," (e) "the action of the

trial judge constituted a plain and palpable abuse of discretion," or (f) "either party has lost a right or interest that may never be recaptured." *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980) (finding that the principles required for the common law writ of certiorari are applicable to applications for extraordinary appeal under Rule 10). Application of Rule 10 in this case is inappropriate, however, because the State appeals from the final judgment of the trial court. The plain language of Rule 10 limits its application to the "interlocutory orders" of the trial court.

### *(2) Jurisdiction via the Common Law Writ of Certiorari*

Under circumstances similar to those presented here, this court in *Leath* considered the State's improperly filed Rule 3 appeal as a petition for the common-law writ of certiorari. "The common-law writ of certiorari is 'of ancient origin and has been characterized as extraordinary, remedial, revisory, supervisory, and prerogative.'" *Lane*, 254 S.W.3d at 354 (quoting *State v. Johnson*, 569 S.W.2d 808, 812 (Tenn. 1978); *Tenn. Cent. R.R. v. Campbell*, 75 S.W. 1012 (Tenn. 1903)). An extremely limited avenue of relief, the writ of certiorari is available "to correct '(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion.'" *Lane*, 254 S.W.3d at 355 (quoting *Willis v. Tenn. Dep't Corr.*, 113 S.W.3d 706, 712 (Tenn. 2002) (citing *Willoughby*, 594 S.W.2d at 392)). The writ may also lie "'[w]here either party has lost a right or interest that may never be recaptured.'" *Id.* (quoting *Johnson*, 569 S.W.2d at 815 (citing *Hale v. State*, 548 S.W.2d 878 (Tenn. 1977); *State v. Dougherty*, 483 S.W.2d 90 (Tenn. 1972))).

A statutory provision for review by the writ of certiorari is codified at Tennessee Code Annotated section 27-8-101. Code section 27-8-101 provides:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy. This section does not apply to actions governed by the Tennessee Rules of Appellate Procedure.

T.C.A. § 27-8-101.

In his separate opinion, Judge Tipton asserts that review of this case via the common law writ of certiorari is inappropriate given the ruling in *Board of Professional*

*Responsibility v. Cawood*, 330 S.W.3d 608 (Tenn. 2010). There, our supreme court held that a petition for writ of certiorari to review the decision of a hearing panel "must be supported by oath or affirmation and state that it is the first application for the writ." *Cawood*, 330 S.W.3d at 609. It is clear from the opinion, however, that the court was discussing the requirements of the petition for writ of certiorari as used to appeal the decision of an administrative body or tribunal. *See generally Lane*, 254 S.W.3d at 354 n. 4 (discussing differences between the statutory writ of certiorari and the common law writ of certiorari). The cases noting the importance of keeping the two writs distinct are myriad. *See, e.g.*, *Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987); *Davison v. Carr*, 659 S.W.2d 361 (Tenn. 1983); *State v. Johnson*, 569 S.W.2d 808, 812 (Tenn. 1978); *McGee v. State*, 340 S.W.2d 904, 905 (Tenn. 1960); *Hewgley v. Trice*, 340 S.W.2d 918, 921 (Tenn. 1960); *Anderson v. City of Memphis*, 72 S.W.2d 1059, 1060 (Tenn. 1934); *State ex rel. McMorrough v. Hunt*, 192 S.W. 931, 932 (Tenn. 1917). Although a provision for a writ of certiorari has been codified, our case law is clear that "[t]he writ of certiorari does not owe its existence to constitutional provision or statutory enactment. It is a common-law writ, of ancient origin, and one of the most valuable and efficient remedies which come to us with that admirable system of jurisprudence." *Tennessee C. R. Co. v. Campbell*, 75 S.W. 1012, 1012 (Tenn. 1903). Also well established is that the codification "was not intended to work a change in the common-law functions of such a writ as a *supervisory or superintending writ*; and, further, that though an appeal may be granted in a particular statutory proceeding, this does not preclude a resort to certiorari." *Hunt*, 192 S.W. at 932 (emphasis added). Our supreme court has described the codification as "merely declaratory of the common law as to the common law writ." *Hewgley*, 340 S.W.2d at 921. Furthermore, our supreme court has previously noted that the statutory prerequisites to the filing of a petition for common law writ of certiorari are applicable only to "the petition for a certiorari as a substitute for an appeal" and not to the exercise of the writ by an appellate court in a supervisory capacity where the action of the lower court exceeds its jurisdiction. *McGhee v. Grady*, 80 Tenn. 89, 92-93 (Tenn. 1883) ("A petition or affidavit for the writ in such a case is not, therefore, restricted to any time, nor required to state that it is the first application, the Code, section 3128, applying only to 'the petition' mentioned in the next preceding sections, that is the petition for a certiorari as a substitute for an appeal."). After considering these authorities, it is our view that *Cawood*, which deals exclusively with the use of the petition for writ of certiorari as an avenue of appeal from the decision of a board or inferior tribunal, has no effect on the power of this court to review the extra-jurisdictional decision of an inferior court via the common law writ of certiorari when no appeal is available via the Rules of Appellate Procedure.

Had the trial court interfered with plea negotiations as the State alleges, the common law writ of certiorari might be available to review the State's claims relative to the trial court's acceptance of the defendant's guilty pleas. *See* Tenn. R. Crim. P. 11(c)(1) ("The

district attorney general and the defendant's attorney, or the defendant when acting pro se, may discuss and reach a plea agreement. The court shall not participate in these discussions."). Or, as happened in *Leath*, had the trial court accepted the plea agreement but nevertheless imposed a sentence of its own choosing, the writ might lie.[2] *See generally Leath*, 977 S.W.2d 132. The record, however, establishes that the trial court rejected the plea agreement entered into by the parties because it did not believe that the defendant should be sentenced to a lengthy period of incarceration for his admitted violations of his community corrections sentence. *See* Tenn. R. Crim. P. 11(c)(3)(A) ("If the agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept or reject the agreement pursuant to Rule 11(c)(4) or (5), or may defer its decision until it has had an opportunity to consider the presentence report."). Indeed, after the trial court expressed its desire to impose a non-incarcerative sentence for the defendant's community corrections violation, the State withdrew the plea offer.

At that point, the trial court informed the defendant that he had the right to withdraw his pleas of guilty. *See* Tenn. R. Crim. P. 11(c)(5)(A) ("If the court rejects the plea agreement, the court shall . . . advise the defendant personally that the court is not bound by the plea agreement; [and] . . . inform the parties that the court rejects the plea agreement and give the defendant an opportunity to withdraw the plea[.]"). The court also told the defendant that if he entered into "blind," or unconditional, guilty pleas, the trial court would impose sentences in case number 35646 in keeping with the plea agreement. The defendant stated that he still wished to enter pleas of guilty to the charges contained in the indictment as well as to the community corrections violation. The trial court then permitted the defendant to enter unconditional and voluntary guilty pleas to both the violation warrant and the charges filed in case number 35646 as modified by the erstwhile plea agreement, including the charge of unauthorized use of an automobile as a lesser included offense of theft, and imposed sentences in both cases without a sentencing hearing.

The decision to accept or reject a plea agreement, *see* Tenn. R. Crim. P. 11; *State v. Layman*, 214 S.W.3d 442, 452 (Tenn. 2007), also rests within the sound discretion of the trial court. The record does not support a finding that the trial court abused its discretion, let alone committed a "plain and palpable" abuse of that discretion, by rejecting the plea agreement in this case. It does appear, however, that the trial court erroneously permitted the defendant to enter a plea of guilty to a reduced charge of unauthorized use of

---

[2]Judge Thomas contends that the actions of the trial court in this case were more like the actions of the trial court in *Leath* and that, as a result, the writ lies to review all of the State's claims. He concludes that the appropriate result is a remand for a new sentencing hearing. *Leath*, however, dictates that the guilty pleas in such a case be vacated and the case remanded for further proceedings that might include a new sentencing hearing, a new plea agreement, or even a new trial. *Leath*, 977 S.W.2d at 136.

an automobile under the count charging theft in case number 35646 after it had rejected the plea agreement and after the plea offer had been withdrawn by the State. Because the trial court exceeded its authority when it permitted the defendant to plead guilty to the reduced charge absent the agreement of the State, this action in case number 35646 is reviewable via the common-law writ of certiorari. *See Lane*, 254 S.W.3d at 355 (stating that the writ of certiorari is available to review "decisions beyond the lower tribunal's authority" (internal quotation marks omitted)).

Although nothing prevents a trial court from accepting a defendant's stipulation of the facts of the offenses as offered by the State and his voluntary guilty plea to all offenses exactly as charged in the indictment, *see State v. Williams*, 851 S.W.2d 828, 830 (Tenn. Crim. App. 1992); *see also generally* Tenn. R. Crim. P. 11, only the prosecutor retains the power to determine what charges to levy against an accused.[3] *See State v. Head*, 971 S.W.2d 49, 51 (Tenn. Crim. App. 1997) ("It is well established law that it is within the district attorney general's discretion, and not the trial court's, to decide if and when a prosecution is to be instituted, the precise character of the offense to be charged, and, once instituted, whether the prosecution should go forward, enter into a plea bargain agreement, or dismiss the prosecution."). The prosecutor also retains the discretionary authority to dismiss or reduce the charged offense. *See Layman*, 214 S.W.3d at 452.

In this case, the defendant was originally charged with driving after being declared an MVHO, leaving the scene of an accident, theft of property valued at more than $1,000 but less than $10,000, and vehicular assault. Per the original plea agreement, the State agreed to reduce the theft charge to the misdemeanor offense of unauthorized use of an automobile. Once the plea agreement was rejected by the trial court and the plea offer withdrawn by the State, the unauthorized use of an automobile charge necessarily reverted to the original theft charge, and the trial court was without authority to reduce the charge without the agreement of the State. This circumstance warrants review of the unauthorized use of a vehicle conviction via the common law writ of certiorari.

As to the revocation of the defendant's community corrections sentence in case number 33292, we note that the decision to revoke a community corrections sentence lies within the discretion of the trial court. *See State v. Harkins*, 811 S.W.2d 79, 82-83 (Tenn.

---

[3]Although Rule 23 of the Tennessee Rules of Criminal Procedure provides the basis for finding that the State has a statutory right to a trial by jury, case law is clear that this provision speaks to the State's right to have a jury rather than a judge decide any factual disputes in the case. *See Singer v. U.S.*, 380 U.S. 24, 35 (1965) (discussing the nearly identical Federal Rule of Criminal Procedure 23). As such, the Rule does not prohibit a defendant's waiving the right to a jury trial, admitting the facts exactly as alleged by the State, and entering voluntary pleas of guilty.

1991). In addition, following a revocation of a community corrections placement, the trial court may require the defendant to serve his sentence in confinement "less any time actually served in any community-based alternative to incarceration." T.C.A. § 40-36-106(e)(4). As a corollary, the trial court retains the discretion, upon revocation, to return the defendant to community corrections. The record does not establish that the trial court committed a plain and palpable abuse of its discretion by revoking the defendant's community corrections sentence and reinstating the defendant to community corrections. Moreover, because the trial court did not alter "the length, terms or conditions of the sentence imposed," T.C.A. § 40-36-106(e)(2), the court was not required to hold a sentencing hearing. *See id.*; *see also, e.g.*, *State v. Samuels*, 44 S.W.3d 489, 493 (Tenn. 2001) (observing that the trial court must conduct a sentencing hearing before imposing "a new sentence" following a community corrections revocation). Because it is this author's view that the judgment of the trial court in case number 33292 is not reviewable via the common law writ of certiorari and Judge Tipton's view that the State's claims regarding the trial court's actions relative to the taking of the defendant's plea are barred by the State's failure to comply with the statutory requirements for seeking review via the writ of certiorari, the State's claim relative to the taking of the plea in case number 33292 is not justiciable. As is discussed more fully below, however, Judges Tipton and Thomas have concluded, on divergent grounds, that a remand for resentencing is appropriate in case number 33292.

### B. Adjudication of Claim Regarding Plea Negotiation

Because we have determined that the guilty pleas in three of the court charges in case number 35646 as well as the community corrections revocation issue in case number 33292 are not presented on appeal within the claim of improper interference with plea negotiations, we address only the conviction resulting from the guilty plea to unauthorized use of an automobile in case number 35646. As a function of determining the trial court's jurisdiction for purposes of utilizing the common law writ of certiorari as a vehicle for appellate review, we have already concluded that the defendant's conviction of unauthorized use of an automobile is void and must be vacated. Thus, case number 35646 is remanded to the trial court for further proceedings on the original charge of theft of property.

Moreover, our conclusion with regard to the defendant's conviction of unauthorized use of an automobile does not implicate the voluntariness of the defendant's remaining guilty pleas in case number 35646 because the defendant entered those pleas in the absence of any agreement. Generally, case law has afforded to defendants the option of withdrawing all pleas made as part of a global plea agreement when part of the agreement has been declared void. *See, e.g.*, *Summers v. State*, 212 S.W.3d 251, 258 (Tenn. 2007). Because the defendant did not enter his guilty pleas as part of a global plea agreement but rather, as the trial court warned the defendant at the hearing, entered "blind" pleas of guilty,

the vacating of the unauthorized use of an automobile conviction would not, standing alone, afford the defendant an opportunity to withdraw the remaining pleas. In consequence, the defendant's convictions of driving while an MVHO, vehicular assault, and leaving the scene of an accident are affirmed.

## II. Failure to Conduct a Sentencing Hearing

The State also complains that by virtue of accepting the defendant's guilty plea and imposing the sentences on the same day, the trial court failed to fulfill its statutory duty to conduct a sentencing hearing. Tennessee Code Annotated section 40-35-209 provides that "[b]efore imposing sentence or making other disposition upon acceptance of a plea of guilty . . . , the court shall conduct a sentencing hearing without unreasonable delay" and that "[a]t the sentencing hearing, the court shall afford the parties the opportunity to be heard and present evidence relevant to the sentencing of the defendant." T.C.A. § 40-35-209(a)-(b).[4] The right of the State to appeal the sentencing decision of the trial court is derived from Code section 40-35-402, which provides, in pertinent part, as follows:

> (a) The district attorney general in a criminal case may appeal from the length, range or manner of the service of the sentence imposed by the sentencing court. The district attorney general may also appeal the imposition of concurrent sentences. In addition, the district attorney general may also appeal the amount of fines and restitution imposed by the sentencing court. An appeal pursuant to this section shall be taken within the same time and in the same manner as other appeals in criminal cases. The right of the appeal of the state is independent of the defendant's right of appeal.

> (b) An appeal from a sentence is limited to one (1) or more of the following conditions:

> (1) The court improperly sentenced the defendant to the wrong sentence range;

> (2) The court granted all or part of the sentence on probation;

---

[4]The defendant asserts that the State was required to request a sentencing hearing following the trial court's acceptance of his guilty pleas. There is no support for this argument in the statute, which obliges the court to hold a sentencing hearing.

(3) The court ordered all or part of the sentences to run concurrently;

(4) The court improperly found the defendant to be an especially mitigated offender;

(5) The court failed to impose the fines recommended by the jury;

(6) The court failed to order the defendant to make reasonable restitution; or

(7) The sentence is inconsistent with the purposes or considerations of sentencing set out in §§ 40-35-102 and 40-35-103.

*Id.* § 40-35-402(a)-(b). Construing this statutory grant of State appeal narrowly, as we are compelled to do, this author is constrained to conclude that this provision does not afford the State the right to appeal the trial court's failure to hold a sentencing hearing as a stand alone claim. The State may appeal the resulting sentence pursuant to any of the provisions contained in Code section 40-35-402, but the failure of the trial court to conduct the hearing appears beyond the ambit of statutorily granted State appeals.

Although the Sentencing Act affords the State an appeal as of right of the sentence imposed, the only claim regarding the sentence actually imposed is that the trial court's failure to conduct a sentencing hearing "thwarted the State's ability to pursue enhanced punishment according to the defendant's appropriate offender classification." The record, however, establishes that the State forfeited any claim regarding the defendant's offender classification by failing to file a timely notice seeking enhanced punishment. Moreover, it is this author's view that because the trial court did not impose a new sentence upon its revocation of the defendant's community corrections sentence, no sentencing hearing was required, and the Sentencing Act would not afford the State an appeal of the trial court's disposition in case number 33292. *See* T.C.A. § 40-36-106(e)(4) (referring to the action of a court revoking a community corrections placement as "resentencing" when the court orders "any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, *less any time actually served in any community-based alternative to incarceration*.") (emphasis added).

Tennessee Code Annotated section 40-35-202 provides that a notice seeking enhanced punishment must be filed "not less than ten (10) days before trial or acceptance of

a guilty plea." Here, the State was well aware of the defendant's criminal history prior to the entry of the guilty pleas and had sought, as part of the plea process, the defendant's agreement that he was a persistent offender.[5] The State did not file notice seeking enhanced offender classification before the plea hearing. The holding of a sentencing hearing would not, as the State suggests, have permitted it to file an enhanced punishment notice because the filing of such notice is timed to the trial or acceptance of the guilty plea and not the sentencing hearing. The language of Code section 40-35-202 is plain and unambiguous; where the State desires enhanced punishment, it must file **a** notice seeking enhanced punishment within the time proscribed by the statute.[6] The State waived any consideration of the defendant's range classification by failing to file a timely notice seeking enhanced punishment even though it assumed that the trial court would be accepting guilty pleas on January 28, 2010. Because that is the only claim raised by the State with regard to the sentence actually imposed, it is this author's opinion that the Sentencing Act does not avail the State any relief in this instance. Moreover, because there are no other claims relative to the sentence, there are no other "sentencing issues" to be resolved by a remand for resentencing. Judge Tipton, however, disagrees, and concludes that the Sentencing Act affords the State review of the trial court's failure to hold a sentencing hearing and that a remand for resentencing in both cases is appropriate.

### III. Conclusion

The members of this panel agree on one thing: the Rules of Appellate Procedure do not afford the State a right to appeal on any of the claims raised. As to the remaining issues, different members have allied to create a majority.

As to case number 33292, the author of this opinion believes that the common law writ of certiorari does not afford the State review of the trial court's revocation of the defendant's community corrections and imposition of a non-incarcerative sentence. Judge Tipton concludes that the common law writ of certiorari is not available for review of any of the State's claims regarding the procedure attending the plea agreement. Because Judge Tipton and this author agree, albeit for different reasons, that the common law writ of

---

[5]After the trial court accepted his pleas of guilty, the defendant agreed that he qualified as a persistent offender, and the trial court imposed sentences within that range.

[6]Because the defendant's plea of guilty to unauthorized use of an automobile has been vacated and that count of the indictment remanded, the State's option to seek enhanced punishment on that charge is revived. With regard to the remanded charge of theft of property valued at more than $1,000 but less than $10,000, we note, however, that that offense was committed during the same criminal episode as the remaining charges in case number 35646. As such, the affirmed convictions in case number 35646 could not be used to increase the defendant's offender classification. *See* T.C.A. § 40-35-107(b)(1).

certiorari is not available to review the trial court's revocation of the community corrections sentence, the revocation is affirmed. Judge Tipton concludes that the Sentencing Act affords the State review of "the sentencing issues" and that "a new sentencing hearing is in order," and Judge Thomas has concluded that a remand for resentencing is appropriate for both case number 33292 and 35646. Accordingly, the result is that case number 33292 is remanded for resentencing.

As to case number 35646, it is this author's view that the record does not establish that the trial court abused its discretion by rejecting the plea agreement or by accepting the defendant's pleas of guilty to violating the MVHO order, leaving the scene of an accident, and vehicular assault. Because Judge Tipton has concluded that the common law writ of certiorari is unavailable to review the trial court's actions in this respect and this author has concluded that the trial court did not abuse its discretion, the result is that the defendant's convictions of violating the MVHO order, leaving the scene of an accident, and vehicular assault are affirmed.

Regarding the defendant's conviction of unauthorized use of an automobile, Judge Thomas and this author agree that the trial court exceeded its authority by permitting the defendant to plead guilty to the reduced charge of unauthorized use of an automobile without the agreement of the State and that the defendant's conviction of unauthorized use of an automobile is void and must be vacated. The result is that the conviction in count three in case number 35646 is reversed and that count is remanded for further proceedings on the original charged offense of theft of property valued at more than $1,000 but less than $10,000.

Finally, it is this author's opinion that although Code section 40-35-402 gives the State a statutory right to appeal the sentence imposed, it does not provide the State a right to appeal the trial court's failure to conduct a sentencing hearing as a stand alone claim and that the State waived any claim with regard to the defendant's range classification by failing to file a notice seeking enhanced punishment. Judge Tipton disagrees and has concluded that a remand for appropriate proceedings is appropriate. Judge Thomas has concluded that a general remand for resentencing is warranted based upon the trial court's interfering with plea negotiations. The result is that case number 35646 is remanded for a new sentencing hearing on the defendant's convictions of violating the MVHO order, leaving the scene of an accident, and vehicular assault.

_____
JAMES CURWOOD WITT, JR., JUDGE

-17-